UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

ALAA YOUNES ET AL                       CIVIL ACTION NO. 26-127

VERSUS                                  JUDGE EDWARDS

NCP CARDIAC CATH LAB OF                  MAG. JUDGE PEREZ-MONTES
ALEXANDRIA LP ET AL

## MEMORANDUM RULING AND ORDER

Before the Court is a Motion to Compel Arbitration, Stay Proceedings Pending Arbitration, and, in the alternative, a Motion to Dismiss (R. Doc. 9) filed by NCP Cardiac Cath Lab of Alexandria, LP and Cardiac Cath Lab of Alexandria, GP, LLC (collectively "Defendants"). Defendants' Motion is fully briefed. *See* R. Docs. 20 & 25. Also before the Court is a Renewed Motion for Preliminary Injunction (R. Doc. 21) filed by Alaa Younes, M.D.; Alexandria Portfolio, LLC; Naseem Jaffrani, M.D.; Harry Hawthorne APMC; Harry Hawthorne, M.D.; SBR, APMC; and Syed Rizvi, M.D. (collectively "Plaintiffs"). Defendants opposed. *See* R. Doc. 26.

Having carefully considered the parties' memoranda and the applicable law, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART** and Plaintiffs' Motion is **DENIED AS MOOT**.

## BACKGROUND

On August 6, 2014, the parties entered into a Limited Partnership Agreement (the "LPA") to do business as the Alexandria Heart & Vascular Center (the "Center"). *See* R. Doc. 1-1 at 3. The Center specialized in the performance of outpatient cardiac

and peripheral vascular procedures including cardiac catheterization, peripheral angiography, coronary angioplasty/stenting, peripheral angioplasty/stenting, pacemaker placement, defibrillator placement, and electrical cardioversion. *See* R. Doc. 9-1 at 7.

Section 10.11 of the LPA provides for a dispute resolution procedure and applies to "any dispute regarding the construction, interpretation, performance, validity, or enforceability of any provisions of … this Agreement, or whether any Person is in compliance with, or breach of, any provisions of … this Agreement or (B) any other dispute of a legal nature arising under … this Agreement.…" *See* R. Doc. 1-1 at 50–51. The LPA also mandates that "[a]rbitration pursuant to Section 10.11 shall be the exclusive method of resolving Disputes other than through agreement of the Disputing Parties." *See id.* at 51. Most relevant here, the LPA provides the process of selecting an arbitrator for disputes less than $250,000 and a panel of three arbitrators for disputes greater than $250,000. *See id.* Under the latter, Section 10.11(e) provides, "[i]f there shall be three Arbitrators, each Disputing Party shall appoint one Arbitrator ..., and the two Arbitrators shall appoint the third Arbitrator …." *See id.*

The LPA also organizes partners into three hierarchical categories: (1) General Partner Cardiac Cath Lab of Alexandria, GP, LLC; (2) Class A Limited Partner, NCP Cardiac Cath Lab of Alexandria, LP; and (3) Class B Limited Partners. *See* R. Doc. 1-1 at 99. At the time the parties entered into the LPA, no Class B Partners existed. *See id.* at 57–58. But, on August 11, 2014, Dr. Harry Hawthorne ("Dr. Hawthorne"),

Dr. Nassem Jaffrani ("Dr. Jaffrani"), and Dr. Alaa Younes ("Dr. Younes") became Class B Limited Partners.[1] *See id.* at 3–4. In June 2020, Dr. Syed Rizvi ("Dr. Rizvi") became a Class B Limited Partner as well.[2] *See id.* Other physicians joined the Center as Class B Limited Partners during its operation; however, due to various reasons, these physicians later exited the partnership either by selling or voluntarily relinquishing their shares. *See id.* at 100. The Center took no legal action against these physicians. *See id.* at 4.

Then, in July 2024, Drs. Younes, Jaffrani, and Rizvi closed their practices, exited the Center, and sought employment elsewhere. *See id.* But Defendants objected. On December 13, 2024, Defendants issued cease and desist letters to several physicians, including Drs. Younes, Jaffrani, Rizvi, and Hawthorne.[3] *See id.* at 61. Based on the letters, Defendants believed that the physicians, including Plaintiffs, accepted employment or signed letters of intent to accept employment with Christus St. Frances Cabrini Hospital located in Alexandria, Louisiana. *See id.* at 63. Because of the financial harm purportedly caused to the Center by the physicians' departures, Defendants demanded that Plaintiffs, and the other physicians, cease and desist from any activity violating the parties' LPA and continue servicing patients at the Center. *See id.* Despite efforts by some of the physicians to schedule the Center's patients, Defendants closed the Center on March 29, 2025. *See id.* at 101.

---

[1] Dr. Hawthorne and Dr. Jaffrani became Class B Limited Partners through their medical corporations, Harry Hawthorne, M.D., APMC and Alexandria Portfolio, LLC, respectively. *See* R. Doc. 1-1 at 3–4.
[2] Dr. Rizvi also became a Class B Limited Partner through his medical corporation SBR, APMC. *See* R. Doc. 1-1 at 100.
[3] It is unclear when Dr. Hawthorne exited the Center.

On July 21, 2025, Defendants filed a Demand for Arbitration with the American Arbitration Association ("AAA"). *See id.* at 70. Plaintiffs objected to the arbitration on three occasions, each time asserting that the LPA's dispute resolution procedure "affords no mechanism for multi-party disputes …." *See id.* at 86–91. On October 27, 2025, the AAA rejected Plaintiffs' position and ordered the appointment of arbitrators pursuant to the LPA. *See id.* at 92–93. Specifically, the AAA provided "in the absence of an agreement by the parties or a court order staying the case, the AAA will proceed with the administration of the arbitration." *See id.* at 92. In compliance with this directive, Plaintiffs selected an arbitrator on December 4, 2025, but maintained their objections. *See* R. Doc. 20-1 at 1. On December 15, 2025, Plaintiffs filed their Petition in the Ninth Judicial District Court, seeking injunctive relief. *See id.* at 1.  Defendants removed the case to this Court on January 14, 2026, *see* R. Doc. 1, and filed the instant Motion to Compel Arbitration thereafter. *See* R. Doc. 9. To note, a preliminary arbitration hearing was held on March 4, 2026, with three arbitrators. *See* R. Doc. 21-3 at 1.

## LAW AND ANALYSIS

"The Fifth Circuit has repeatedly emphasized the strong federal policy in favor of arbitration." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (citing *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)). The Federal Arbitration Act ("FAA") applies to any contract that evinces a "transaction involving commerce." 9 U.S.C. § 2. When the FAA applies, as it does here, *see* R. Doc. 9-1 at 10, courts ordinarily conduct a two-step inquiry. "First, we ask if the party has agreed to

4

arbitrate the dispute." *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017) (quoting *Sherer v. Green Tree Serv. L.L.C.*, 548 F.3d 379, 381 (5th Cir. 2008)). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (citations omitted). "In determining whether the dispute falls within the scope of the arbitration agreement, 'ambiguities ... [are] resolved in favor of arbitration.'" *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.) (citation omitted). And step one "is generally made on the basis of ordinary state-law principles that govern the formation of contracts." *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008) (citations and quotations omitted).

"If the party opposing arbitration has agreed to arbitrate, we then ask if any federal statute or policy renders the claims nonarbitrable." *Id.* (citing *Sherer*, 548 F.3d at 381)) (cleaned up). "The second step is to determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). If, however, an arbitration agreement contains a valid delegation clause, the analysis changes and courts need only determine whether there is a valid arbitration agreement (step one) and whether there is a valid delegation clause. *See Reyna v. Int'l Bank of Com.*, 839 F.3d 373, 378 (5th Cir. 2016) (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201–02 (5th Cir. 2016)).

Under step one, Section 10.2 of the LPA indicates that Texas law governs the contract's formation. *See* R. Doc. 1-1 at 48. "Under Texas law, a contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Graham v. Leisure Pools USA Trading, Inc.*, No. 23-734, 2024 WL 1473743, at *3 (W.D. Tex. Feb. 26, 2024), *report and recommendation adopted*, No. 23-734, 2024 WL 1471547 (W.D. Tex. Apr. 3, 2024). Plaintiffs appear to only dispute consent. *See* R. Doc. 1-1 at 104. They argue "[t]he LPA plainly does not contemplate arbitration of such a claim, as it is impossible to comply with the process for arbiter selection. Thus, the threshold requirement of consent is lacking." *See id.* More specifically, Plaintiffs target Section 10.11(e)—the LPA's arbitrator selection process. *See id.* at 51. Plaintiffs contend the parties agreed that each disputing party shall appoint one arbitrator for disputes amounting to more than $250,000. *See id.*; *see also* R. Doc. 20 at 13. According to Plaintiffs, because there are more than two disputing parties in the pending arbitration, *see* R. Doc. 1-1 at 93, Section 10.11(e) does not provide multiple disputing parties with the right to select their own arbitrator, as contemplated by the LPA. *See* R. Doc. 20 at 13. In such absence, Plaintiffs argue that their consent to arbitrate this multiparty dispute is lacking. *See id.*

Yes, "[c]onsent is essential under the FAA," *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019), because "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chicago, Inc. v.*

*Kaplan*, 514 U.S. 938, 945 (1995). But "the only issue at the first step is whether there is any agreement to arbitrate any set of claims." *Kubala*, 830 F.3d at 202. In *Kubala*, "it [was] obvious that the[ ] parties validly formed an agreement to arbitrate some set of claims." *Id*. So too here, the LPA is clear that "any dispute regarding the construction, interpretation, performance, validity, or enforceability of any provisions of … this Agreement" is subject to arbitration. *See* R. Doc. 1-1 at 50–51. The parties thus contemplated arbitration, and Plaintiffs have not demonstrated that the LPA, or the arbitration provisions therein, are otherwise invalid. To the extent there is ambiguity that the parties intended for a multiparty dispute to fall within the scope of the agreement, this ambiguity must be "resolved in favor of arbitration." *Fleetwood*, 280 F.3d at 1073 (citations omitted). Because the parties entered into an agreement to arbitrate any dispute, step one favors arbitration.

While we would typically move the analysis to step two, Defendants have pointed to a purported delegation clause, *see* R. Doc. 25 at 3–5, which changes our analysis. *Kubala*, 830 F.3d at 201 (citing *First Options of Chi., Inc.*, 514 U.S. at 942).[4] To determine whether a purported clause is in fact a delegation clause, courts must analyze whether "it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. "[A] valid delegation clause

---

[4] Initially, we note that Plaintiffs put forth no arguments specific to the purported delegation provision. However, based on the record, it appears that Defendants waited to assert this delegation argument until submitting their reply memorandum. *See* R. Doc. 25 at 3–5. While arguments raised for the first time in a reply memorandum are generally deemed untimely and improper, as they typically deny the opposing party a fair opportunity to respond, *see Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (citing *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005)), Plaintiffs had the opportunity to address Defendants' delegation provision contention in their reply memorandum in support of their preliminary injunction. But no reply memorandum was filed. Therefore, Plaintiffs did not challenge the purported delegation clause.

requires the court [in almost all cases] to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* (citing *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). The Fifth Circuit has also "held that, generally, stipulating that the AAA Rules will govern the arbitration of disputes constitutes such 'clear and unmistakable' evidence." *See Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552 (5th Cir. 2018) (citations omitted).

First, Defendants rely on the Supreme Court's analysis of a similar provision in *Rent–A–Ctr., W., Inc. v. Jackson. See* R. Doc. 25 at 3–4; *see also* R. Doc. 26 at 11. In *Rent–A–Center*, the Supreme Court determined that the parties' agreement, which provided that "[t]he Arbitrator … shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable," contained a delegation clause. 561 U.S. at 66, 72. Defendants point to the language in Section 10.11(a)(ii) and assert that the language—"Arbitration … shall be the exclusive method of resolving" any dispute "regarding the construction, interpretation, performance, validity or enforceability of any provision of … this Agreement"—is a delegation clause. *See* R. Doc. 25 at 3–4; *see* R. Doc. 26 at 11.

Second, Defendants refer to Section 10.11(f) of the LPA, which provides that "[t]he Arbitrator shall expeditiously … hear and decide all matters concerning the Dispute," and "[t]he Arbitration shall be conducted in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association … to

the extent that such rules do not conflict with the terms of this Agreement." *See* R. Doc. 1-1 at 52. Defendants then rely on Rule 7 of the Commercial Arbitration Rules of the AAA, which states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." *See* R. Doc. 26 at 11. Taking these provisions together, Defendants claim that the LPA's language evinces the parties' intent to delegate any question of arbitrability to the arbitrator. *See* R. Doc. 26 at 12.

Defendants are correct. The Supreme Court in *Rent–A–Center* held that "we must treat [the delegation provision] as valid under [the FAA]." *Rent–A–Ctr., W., Inc.*, 561 U.S. at 72. The language in Section 10.11(a)(ii) of the LPA tracks the language in *Rent–A–Center*. Further, "[b]ecause the [LPA] expressly incorporate[s] the AAA rules [in Section 10.11(f)], the parties have clearly and unmistakably demonstrated their intent to delegate" to the arbitrator the power to rule on the validity, enforceability, and scope of the LPA's arbitration provisions. *Arnold*, 890 F.3d at 553; *Exec. Strategies Corp. v. Sabre Indus. Inc.*, No. 20-1067, 2020 WL 7213002, at *6 (W.D. La. Dec. 7, 2020) ("Here, the parties' arbitration clause incorporates the AAA Rules and, therefore, contains clear and unmistakable evidence that the parties intended that the arbitrator will decide the issue of arbitrability."); *Sierra v. Halliburton Energy Servs., Inc.*, No. 17-1002, 2018 WL 4089404, at *5 (W.D. La. Aug. 27, 2018).

Regardless of whether the arbitration agreement included a valid delegation clause, under step two of the analysis, the Court must consider "whether any federal statute or policy renders the claims nonarbitrable." *JP Morgan & Chase Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). Plaintiffs contend that the pending arbitration lacks a lawful purpose because it could impose obligations that would violate federal and state law. *See* R. Doc. 20 at 14. Specifically, Plaintiffs claim that, under Defendants' theory, they could be held liable for failing to honor a patient referral agreement, rather than for breaching a fiduciary duty, which would be at odds with several laws, including La. R.S. § 37:1745(B), 42 U.S.C. § 1320a-7b, and 42 U.S.C. § 1395nn. *See id.* Defendants counter that the Court should only consider whether external legal constraints exist—not the parties' actions. *See* R. Doc. 26 at 10.

"In order to overcome the presumption in favor of arbitration, the party opposing arbitration bears the burden of demonstrating that 'Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Kennedy v. Homecomings Fin. Network*, No. 06-2289, 2006 WL 2983019, at *3 (E.D. La. Oct. 17, 2006) (quoting *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir.2002)). Plaintiffs cannot. While Plaintiffs may raise legal challenges to a potential outcome of arbitration, they "point[ ] to no federal or state law that would *preclude enforcement* of the arbitration *agreement*." *Pepe v. New York Life Ins. Co.*, No. 23-1435, 2024 WL 235198, at *3 (E.D. La. Jan. 4, 2024), *report and recommendation adopted*, No. 23-1435, 2024 WL 232088 (E.D. La. Jan. 22, 2024) (emphasis added). Plaintiffs do not

10

show that the LPA and its arbitration *provisions* are unenforceable "due to illegality, unconscionability, or something else" that would foreclose arbitration. S*ee Nii-Moi v. McAllen Hospitalist Grp., PLLC*, No. 21-1, 2021 WL 2139402, at *2 (E.D. Tex. May 26, 2021). Nothing before the Court indicates any legal constraints that would preclude arbitration in this case.

Plaintiffs contend that "[t]he inability to form the tribunal required by the [LPA] is not a procedural disagreement about arbitrator selection. It is a structural failure that eliminates the consent required to compel arbitration." *See* R. Doc. 20 at 13. Plaintiffs rely on *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668 (5th Cir. 2002) for the proposition that "arbitration agreements must be enforced to [their] terms, including provisions governing the formation of arbitration tribunal," and that courts cannot compel arbitration under a structure different from those terms. *See id.* Because Plaintiffs have not "agreed" to the specific tribunal formation in the pending Arbitration, they argue that no contract exists to compel arbitration absent this fundamental element. *See id.* Defendants disagree. The number of arbitrators is, according to Defendants, a procedural issue rather than an issue of substantive arbitrability and thus is for the arbitrators to decide. *See* R. Doc. 25 at 3.

"An arbitration agreement is a contract; accordingly, arbitrators must be selected pursuant to the method provided in it." *Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 625 (5th Cir. 2006) (citing *Brook*, 294 F.3d at 672). The FAA "expressly provides that where a method for appointment is set out in the arbitration agreement, the agreed upon method of appointment 'shall be followed.'" *Brook*, 294 F.3d at 672–

73 (citing 9 U.S.C. § 5). Courts may, however, intervene before an arbitration award in three limited circumstances: "(1) if the arbitration agreement does not provide a method for selecting arbitrators; (2) if the arbitration agreement provides a method for selecting arbitrators but any party to the agreement has failed to follow that method; or (3) if there is a lapse in the naming of an arbitrator or arbitrators." *See BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 490–91 (5th Cir. 2012) (citing *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 482 (5th Cir. 2002)). But none of these circumstances are present here.

Remember, we are limited to determining "whether an agreement to arbitrate exists and [the enforcing] of that agreement by compelled arbitration of claims that fall within the scope of the agreement[,] even [if] the court determines some default has occurred." *See Gulf Guar. Life Ins. Co.*, 304 F.3d at 487. Procedural challenges lie with the arbitrator—not the Court. *See id.* ("[C]hallenges to the procedural aspects of arbitration are for the arbitrator to decide, while challenges to the substantive arbitrability of disputes are for the courts to decide."); *see also Turner Indus. Grp., LLC v. Rain CII Carbon LLC*, No. 14-1031, 2014 WL 1870622, at *2 n.19 (E.D. La. May 8, 2014) (noting that courts may only intervene in the arbitral process rarely and that procedural aspects fall outside that limited scope); *Brown v. Fort Hood Fam. Hous. LP*, No. 20-1001, 2022 WL 22883290, at *3 (W.D. Tex. Nov. 17, 2022) (same); *IBS Warehousing LLC v. Underwriters at Lloyd's London*, No. 18-285, 2019 WL 13109764, at *3 n.19 (S.D. Tex. Oct. 2, 2019) (same). The Court cannot entertain challenges that, as here, "essentially go to the procedure of arbitration, *specifically*

12

*the arbitrator selection process*, and to the alleged unfairness of that process" before an award is issued. *See Gulf Guar. Life Ins. Co.*, 304 F.3d at 488 (emphasis added). Here, "the AAA consider[ed] the Disputing Parties to be" Defendants as the Claimants and Plaintiffs as the Respondents. *See* R. Doc. 1-1 at 93.[5] As of March 4, 2026, both Claimants (Defendants) and Respondents (Plaintiffs) had each selected an arbitrator—pursuant to Section 10.11(e) of the LPA. *See* R. Doc. 21-3 at 1; *see also* R. Doc. 1-1 at 51–52. And a three-member panel awaits arbitration in accordance with the pending arbitration schedule. *See id.* at 2–7. The Court finds no compelling circumstances to intervene in the pending arbitration.

Accordingly, the LPA contains a valid agreement to arbitrate, mandates arbitration as the exclusive method to resolve disputes that arise under the LPA, and includes a delegation provision such that questions of arbitrability go before the arbitrators. "When a district court finds that a lawsuit involves an arbitration clause, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see Thompson v. Buzbee*, No. 24-2827, 2025 WL 2050955, at *2 (E.D. La. July 22, 2025). Thus, the Court must compel arbitration as provided by the LPA and stay all proceedings in this case pending arbitration.

---

[5] Specifically, the Claimants include NCP Cardiac Cath Lab of Alexandria, LP and Cardiac Cath Lab of Alexandria, GP, LLC while the Respondents include Alaa Younes, M.D.; Nassem Jaffrani, M.D.; Syed B. Rizvi, M.D.; Alexandria Portfolio, LLC; Harry Hawthorne M.D.; SBR, APMC; and Vikram Nijjar, M.D. *See id.*

## CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Defendants' Motion to Compel Arbitration, Stay Proceedings Pending Arbitration, and, in the alternative, a Motion to Dismiss (R. Doc. 9) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** with respect to Defendants' request to compel arbitration and stay this litigation pending arbitration. The Motion is **DENIED** insofar as Defendants request dismissal of Plaintiffs' claims.

**IT IS FURTHER ORDERED** that Plaintiffs' Renewed Motion for Preliminary Injunction (R. Doc. 21) is **DENIED AS MOOT**.

**THUS DONE AND SIGNED** in Chambers this 10th day of April, 2026.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**